UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-80105-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

YOSBEL ROQUE RUBIER,

    Defendant.
_____:

## MOTION FOR DOWNWARD VARIANCE

Defendant, Yosbel Roque Rubier, by and through his undersigned counsel, requests this Court grant a downward variance and sentence him below his recommended guideline range.

Mr. Roque Rubier writes, in Spanish, at a first grade, elementary school level.[1] *Dr. Orozco Report* at 13. He reads, in Spanish, at the level of a third grader in their first month of school. *Id.* A separate education test puts him in a kindergarten level for both reading fluency and writing fluency. *Id.* Such testing by psychologist Dr. Orozco is consistent with Mr. Roque Rubier's Cuban education records, which found him to be "intellectually retarded" (an old term for the now DSM diagnosis of an intellectual disability) and suitable for a special needs school. Further, current IQ testing corroborates an intellectual disability finding:

---

[1] Mr. Roque Rubier does not read or write in the English language.

1

"Mr. Roque Rubier's overall intellectual functioning is estimated to be in the very low range, with a General Intellectual Ability (GIA) score of 60, placing him at the 0.4th percentile. This indicates that his cognitive performance was lower than approximately 99.6% of individuals in the normative sample, suggesting significant limitations in general reasoning, problem-solving, and learning capacity." *Id.* at 12. A cognitive assessment put Mr. Roque Rubier in a "notably low" range with cognitive impairments typically associated with Alzheimer's disease. *Id.* at 10. Dr. Orozco said, "these deficits may reflect a broader pattern of cognitive inefficiency consistent with neurodevelopmental compromise, long-standing intellectual limitations, or emerging neurocognitive decline. The results suggest significant cognitive vulnerabilities that may interfere with complex problem-solving, independent functioning, and adaptability under stress." *Id.* at 11. While Mr. Roque Rubier scored slightly higher in some specific topic areas, Dr. Orozco opines this is because "Mr. Roque Rubier is able to think through visual and numeric patterns when they do not rely heavily on language." *Id.* at 12. Dr. Orozco ultimately diagnosed Mr. Roque Rubier with the following diagnoses from the DSM-5TR: 1) Major Depressive Disorder, Recurrent, With Anxious Distress, Moderate; 2) Posttraumatic Stress Disorder, With Dissociative Symptoms; 3) Intellectual Disability, Mild. *Id.* at 18-19. Paragraph 52 of the PSI acknowledges that since the age of eight, Mr. Roque Rubier has struggled with diagnosed anxiety and depression. A mental health evaluation ordered by Magistrate Judge Ryon M. McCabe in 2025 resulted in a more recent diagnosis of

2

major depressive disorder. In short, Mr. Roque Rubier has also been struggling with these condition for the better part of his life, including at the time of the commission of the offense.

In short, the government's assessment that Mr. Roque Rubier "did not impress the Government as one who would be the mastermind of the scheme" is accurate and confirmed by education records, family interviews, and psychological testing. *See* D.E. 42, n. 1. While legally Mr. Roque Rubier is just as guilty for signing his name to these businesses and checks, as a nominee owner and withdrawing funds, undersigned counsel would submit he is less culpable than the masterminds of the scheme and the guidelines do not adequately take into consideration Mr. Roque-Ruber's intellectual disability and his role in this offense. Mr. Roque Rubier was raised outside of the United States in Cuba and did not receive education past the second grade, when he would have been approximately 7 or 8 years old. The schooling Mr. Roque Rubier did receive in the early years of his life was not standard, but specifically geared towards students with learning disabilities and special needs, which he still has today. Mr. Roque Rubier was recruited into this fraudulent scheme when he was vulnerable, living out of his car, and in immediate need for money to resolve pressing health concerns. By virtue of his substandard education from a different country where universal healthcare is the standard (unlike the United States), Mr. Roque Rubier cannot reasonably possess the intimate knowledge of the complex workings of the United States healthcare system (how to establish and register a legitimate front LLC, the need for active NPIs that accurately correspond with prescribing doctors,

how to file insurance claims, what procedures qualify for Medicare coverage, how much those procedures are usually billed at) required to organize a successful scheme that would defraud Medicare out of close to one million dollars. Mr. Roque Rubier can barely read and write in Spanish, he did not fill out these forms, create a corporation, nor submit medical forms for reimbursement in English. He is guilty and remorseful for his participation in this fraud scheme, but he was a nominee owner who withdrew funds from banks.

FCM Supply was created without Mr. Roque Rubier (by Russell Graham) and it was dissolved after Mr. Roque Rubier went to Cuba for surgery (likely without any involvement of Mr. Roque Rubier). Mr. Roque Rubier sat for hours with the FBI and explained how he was recruited into this scheme, handed pre-filled documents and checks to sign, driven to the bank by another participant who he gave the money to, and later caught red handed, essentially as the fall guy. He did everything he could to show his remorse and cooperate with the government. Still, he remains the only person prosecuted for this offense. Yet a lack of formal criminal charges for coconspirators does not prevent this Court from accounting for his disability and more limited role in this scheme. *See* DE 42 at 8-9. Mr. Roque Rubier's mental health and intellectual disability make him different than the average offender who appears before the Court.

Indeed, according to a 2018 General Accounting Office Report to Congressional Committees on Federal prisons and mental health, the number of inmates in BOP custody with serious mental health problems is very low. "As of May 27, 2017, BOP

incarcerated and was responsible for ensuring that about 187,910 inmates received medical and mental health care—the agency considered 7,831 (4.2 percent) of these inmates to have a serious mental illness." United States Government Accountability Office, *Report to Congressional Committees: Information on Inmates with Serious Mental Illness and Strategies to Reduce Recidivism*, https://www.gao.gov/assets/gao-18-182.pdf (last accessed August 11, 2025). Thus, Mr. Roque Rubier's serious mental illness is already well outside the typical case in the federal criminal justice system. According to the GAO study, the Defendant is unlike 96% of other federal defendants sentenced to incarceration merely by suffering from a serious mental illness.

And yet, the average sentence for an individual like Mr. Roque Rubier who is scored under USSG § 2B1.1 with a total offense level of 15 and a Criminal History Category of I is only 13 months, a 5-month variance from the bottom of the sentencing guidelines in this case. *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard. Additionally, a larger data compilation of 621 defendants with identical offense level computations of 15, pursuant to USSG § 2B1.1, and criminal history category of I, reveals that only 20% of cases were sentenced within the advisory range of the guidelines, with close to 60% receiving a downward departure or variance (see figures below).



**Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)**
Fiscal Year 2020-2024

Note: The figure includes the 335 defendants reported to the Commission (1) whose primary guideline was §2B1.1, with a Final Offense Level of 15 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.



**Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell**
Fiscal Year 2020-2024

Note: The figure includes the 621 defendants reported to the Commission whose primary guideline was §2B1.1, with a Final Offense Level of 15 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

Finally, these average sentences do not consider the mandatory minimum of two years that Mr. Roque Rubier must serve consecutive to any guideline sentence for the conviction for aggravated identify fraud. In this way, Mr. Roque Rubier is compelled to serve a more severe sentence than the other healthcare fraud defendants that undersigned counsel has represented in the district:

- In *United States v. Christopher Fuller*, 18-CR-80111-ROSENBERG, the agreed loss amount for the healthcare fraud conspiracy was $6,576,000, the total offense level was 23 (prior to the government's motion for a 2 level variance), and Fuller's criminal history was a category of V. Final PSI at DE 325. He received a total sentence of 24 months in prison. DE 350.

- In *United States v. Kenneth Scott,* 19-80223-CR-MARRA, the parties agreed to an estimated loss amount attributable to the defendant of more than $250,000 but not more than $550,000, a two level minor role reduction, but the probation office requested a abuse of public trust enhancement for two additional levels, which made the offense level calculated by the probation office a 15 (the same offense level as Mr. Roque Rubier).[2] DE 116. The total value of the fraudulent conspiracy was over twenty million dollars. Department of Justice Press Release: Husband and Wife Sentenced in Large-Scale Fraud and Bribery Scheme Involving Two South Florida VA Hospitals, available at https://www.justice.gov/usao-sdfl/pr/husband-and-wife-sentenced-large-scale-fraud-and-bribery-scheme-involving-two-south (posted August 19, 2021). Because of his cooperation with the U.S. government, the government filed a motion for a probationary sentence and the Court ultimately imposed a sentence of probation. DE 117, 126.

- In *United States v. Pamela Edwin*, 19-80169-CR-ROSENBERG, the parties agreed to a loss amount of $24,800,000, and including her 3 level minimal

---

[2] Defendant Scott objected to the public trust enhancement at DE 105.

participant reduction, her total offense level was 24. DE 177. Ms. Edwin cooperated with the government, and they moved for a 50% reduction of sentence and a sentence of 26-32 months. DE 178. The Court ultimately sentenced Ms. Edwin to probation. DE 184.

In conclusion, Mr. Roque Rubier asks this Court to consider his mental health issues and the disparity with other defendants and sentence him to a term of prison below the recommended guideline range.

On August 11, 2025, AUSA Shannon Shaw was contacted, and the government objects to this motion.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                            *s/ Kristy Militello*
                                            Kristy Militello